UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

FAWN SECOND AVENUE LLC, 118 SECOND
AVENUE LLC, and SFP 1881 HOLDINGS LLC,

                      Plaintiffs,

        v.

FIRST AMERICAN TITLE INSURANCE CO.,

                      Defendant.

------------------------------------------------------------------x

Case No: 1-21-cv-03715 (KPF)

Hon. Katherine Polk Failla
United States District Judge

# MEMORANDUM OF LAW IN OPPOSITION
# TO PLAINTIFF'S MOTION TO DISMISS

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP
Matthew E. Hearle, Esq.
Farida Ali, Esq.
1501 Broadway – 22nd Floor
New York, New York 10036
(212) 221-5700

*Attorney for Plaintiffs*
*Fawn Second Avenue LLC, 118 Second Avenue LLC,*
*and SFP 1881 Holdings LLC*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

    1.    The Property, Certificate of Title, Title Report, and Policy .................................. 2

    2.    Relevant Policy Provisions ......................................................................... 3

PROCEDURAL HISTORY .................................................................................. 3

APPLICABLE STANDARD ................................................................................. 5

ARGUMENTS: PLAINTIFFS' COMPLAINT ASSERTS COGNIZABLE CAUSES OF
ACTION, AND DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED ....... 7

    1.    The "Covered Risks" Section of the Policy Entitles Plaintiffs
        To Indemnification ................................................................................. 7

    2.    Policy "Exclusion 1(a)," Relied On by Defendant, Does Not Support Denial
        of Plaintiffs' Indemnification Claim ......................................................... 10

    3.    Policy "Exclusion 3(a)," Relied On by Defendant, Also Does Not Support
        Denial of Plaintiffs' Indemnification Claim ............................................. 11

    4.    Defendant Raises a Question of Fact that Precludes Dismissal of
        This Action ............................................................................................. 12

    5.    Plaintiffs' Claim for Declaratory Judgment is Not Duplicative of its
        Breach of Contract Claim ........................................................................ 14

    6.    Plaintiffs' Negligence Claim Should Not be Dismissed Because it Has a
        Basis in New York Law ........................................................................... 15

        a.    Defendant is Liable for Negligence Because it Had and Has a Legal
            Duty to Plaintiffs ............................................................................. 15

        b.    Plaintiffs' Negligence Claim Has Not Been Foreclosed as a Result of
            Any Purported Merger Between the Certificate of Title and Policy ........ 18

    7.    The State Court Properly Decided the Defendant's Motion to Dismiss ............... 19

CONCLUSION .................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*237 Park Invs. LLC v. Royal & Son All.*, No. 03 CIV. 63024 (PKC),
    2004 WL 385067 (S.D.N.Y. Mar. 1, 2004) ............................................................ 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 5

*Barton v. Pret A Manger (USA) Ltd.*, No. 1:20-CV-04815 GHW, 2021 WL 1664319,
    (S.D.N.Y. Apr. 27, 2021) .......................................................................................... 6

*Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021) ................ 6

*Cane v. First American Tit. Ins. Co. of N.Y.*, No. 30273/2012, 2015 WL 2441883
    (Sup. Ct. Suff. Cnty. May 07, 2015) ........................................................................ 18

*Carleton v. Lombard, Ayers & Co.*, 149 N.Y. 137 (1896) .............................................. 16, 17

*Carrier Corp. v. Allstate Ins. Co.*, 187 A.D.3d 1616 (4th Dep't 2021) ........................... 14, 15

*Chrysler First Fin. Servs. Corp. of Am. v. Chicago Title Ins. Co.*,
    156 Misc. 2d 814 (Sup. Ct. Nassau Cnty. 1993) .................................................. 17, 18

*Citibank v. Chicago Tit. Ins. Co.*, 214 A.D. 2d 212 (1st Dep't 1995) ............................. 18, 19

*Conergics Corp. v. Dearborn Mid-W. Conveyor Co.*, 144 A.D.3d 516 (1st Dep't 2016) ...... 14, 15

*Cruz v. Commonwealth Land Title Ins. Co.*, 157 A.D.2d 333 (1st Dep't 1990) ...................... 19

*Exec. Photo, Inc. v. Norrell*, 765 F. Supp. 844 (S.D.N.Y. 1991) ....................................... 5

*Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) ................ 5

*Graham Hanson Design LLC v. 511 9th LLC*, No. 10 CIV. 5493 KMW,
    2011 WL 744801 (S.D.N.Y. Feb. 24, 2011) .............................................................. 5

*Hamelin v. Etna Abstract Corp.*, 174 Misc. 2d 712 (Sup. Ct. Franklin Cnty. 1997) ................. 13

*Integra Telecom, Inc. v. Twin City Fire Ins. Co.*, No. CIV.08-906-AA,
    2010 WL 1753210 (D. Or. Apr. 29, 2010) .............................................................. 12

*J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 21 N.Y.3d 324 (2013) ................................... 14

*Kevin Spence & Sons, Inc. Boar's Head Provisions Co., Inc.*, 5 A.D. 3d 352
(2d Dep't 2004) ..................................................................................................... 14

*Kings Infiniti Inc. v. Zurich American Ins. Co.*, No. 501914/2013,
2014 WL 1328274 (Sup. Ct. Kings Cnty. 2014) ............................................ 14, 15

*Kings Park Indus., Inc. v. Affiliated Agency, Inc.*, 22 A.D.3d 466 (2d Dep't 2005) ............. 14, 15

*Phillips v. Kidder, Peabody & Co.*, 782 F. Supp. 854 (S.D.N.Y. 1991) ...................................... 13

*Schenectady Int'l Inc. v. Emps. Ins. of Wausau*, 245 A.D.2d 754 (3d Dep't 1997) ...................... 14

*Timac Realty v. G&E Tremont, LLC*, No. 652370/11, 2013 WL 2154896
(Sup. Ct. N.Y. Cnty. Mar. 27, 2013) ......................................................................... 18

*Vogel v. Boris*, No. 20 CIV. 9301 (VM), 2021 WL 1668072,
(S.D.N.Y. Apr. 28, 2021) .............................................................................................. 6

*Washington Temple Church of God in Christ, Inc. v. Glob. Properties & Assocs., Inc.*,
No. 29690/05, 2012 WL 5187556, *4 (Kings Cnty. Sup. Ct. 2012) ........................................ 13

This Memorandum of Law is respectfully submitted on behalf of plaintiffs, Fawn Second Avenue LLC, 1881 Second Avenue LLC, and SFP 1881 Holdings LLC ("Plaintiffs"), in opposition to the motion to dismiss of defendant, First American Title Insurance Company ("Defendant"), for an order under Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of Plaintiffs' Amended Complaint.  As set forth below, Plaintiffs respectfully ask this Court to deny Defendant's motion.

## PRELIMINARY STATEMENT

Defendant is a title insurance company that has denied Plaintiffs' claim for insurance coverage.  After Plaintiffs acquired the property located at 82 Second Avenue, New York, New York ("Property"), Plaintiffs received three warning letters from the Landmarks Preservation Commission ("LPC") demanding that certain work stop immediately because of the Property's landmarked status.  ECF No. 27 at 3 (¶ 15).  That designation was news to Plaintiffs because Defendant, in issuing both a title search and a title policy, failed to advise Plaintiffs of the Property being situated in a landmark district.  Plaintiffs did not know of the Property's landmarked status, or of any landmark-related restrictions, which interferes with Plaintiffs' intended use and enjoyment of the Property, diminishes the Property's value, and impedes any future alterations or development of the Property.

Plaintiffs seek to enforce the plain terms of the title insurance policy that covers the title defect. Indeed, the landmark designation issue falls squarely within the insurance policy's "Covered Risks" section. Nevertheless, Defendant ignores the relevant policy provision and relies on other extraneous and inapplicable provisions in order to try to escape indemnifying Plaintiffs.

Defendant's arguments are unavailing or are inappropriately asserted in the context of a pre-answer motion to dismiss.  For example, Defendant's assertion that "no evidence appeared in

the public real property records" as of "the date of the Policy," ECF No. 34 at 18, is a factual argument (that finds no support in the record and) that is beyond the scope of a Rule 12(b)(6) motion.  Moreover, it mischaracterizes what actually is in the public record because Plaintiffs have alleged that the landmark designation most assuredly was in New York City's public records, and nothing in the title insurance policy limits defect coverage to only those public records filed in the "real property records."

Defendant also errs in asserting that Plaintiffs' claim for declaratory judgment is duplicative of its breach of contract claim, because both claims are routinely and simultaneously brought under New York law.  Finally, and contrary to Defendant's assertion, Plaintiffs' negligence claim has a basis in New York law and should not be dismissed.

Because Defendant's motion is procedurally and substantively without merit, the Court should deny Defendant's motion to dismiss in its entirety.

## FACTUAL BACKGROUND

**1.      The Property, Certificate of Title, Title Report, and Policy**

In connection with Plaintiffs' purchase of the Property, Plaintiffs received from Defendant: (1) a Certificate of Title, No. 3019-749066NY3; (2) a Title Report, Order/File No. 3019-749066NY3; and (3) an Owner's Policy of Title Insurance ("Policy"), No. 3019-749066NY6. *See* ECF No. 33-3 at 4 (certificate of title No. page); ECF No. 33-3 at 15 (title report Order/File No. page); ECF No. 33-5 at 2 (policy No. page).  None of these documents reported the Property's landmarked status and location in a landmark district.

On or about October 3, 2017, Plaintiffs received from the LPC three separate warning letters. ECF No. 27 at 3 (¶ 15). These letters demanded that certain work Plaintiffs had undertaken at the Property (installation of roof railing, replacement of windows, painting of storefront,

2

installation of signage) "stop immediately," as the Property was located within a landmarked historic district. *Id*. At all relevant times, Plaintiffs were unaware of the Property's landmarked status, and any landmark-related restrictions. Had Plaintiffs been aware of the landmark designation, they would not have purchased the Property.

Plaintiffs filed claims with the Defendant regarding the undisclosed title defect, demanding that Defendant honor its obligation to indemnify Plaintiffs under the Policy. Defendant refused despite the plain language of the Policy, and now Plaintiffs suffer the consequences of owning Property they cannot develop for its intended purpose.

    **2.**    **Relevant Policy Provisions**

All relevant Policy provisions and related facts are set forth below (see "Argument" section) in support of Plaintiffs' opposition to Defendant's motion to dismiss the Amended Complaint. The facts discussed below are incorporated by reference without repetition, with specific facts highlighted to establish Plaintiffs' entitlement to indemnification as a matter of law.

<u>**PROCEDURAL HISTORY**</u>

Plaintiffs commenced an action against Defendant in state court on November 16, 2018 with the filing of a Summons and Notice. On March 7, 2019, Defendant entered an appearance and demanded delivery of the Complaint. Pursuant to CPLR 3012(b), the Complaint had to be served within 20 days of the demand. In late March, Plaintiffs' attorney assigned to the case left the firm somewhat abruptly. The sudden departure coupled with the resulting short staffing led to a delay in determining the status of pending matters. In May 2019, the firm discovered that the Complaint had not been served. The Complaint was immediately prepared and served on May 31, 2019.

Defendant objected to the untimely service of the Complaint. Plaintiffs suggested that Defendant overlook the delay because it would suffer no prejudice, and the action could be dismissed and reinstated thereafter, with little to be gained by not proceeding as if the Complaint were timely served.

On June 20, 2019, Defendant filed a motion to dismiss asserting both procedural—Plaintiffs' untimely service—and substantive arguments. Plaintiffs opposed the motion, and again proposed overlooking the untimely service of the Complaint or, alternatively, stipulating to discontinuing the action followed by reinstatement.  Defendant declined Plaintiffs' proposal.

On June 20, 2019, the state court entered an order denying Defendant's motion to dismiss, finding that the "brief delay of two months" did not "substantially prejudice" Defendant. ECF No. 33-11 at 2. The Court also addressed and rejected Defendant's substantive arguments and determined that Defendant's motion did "not defeat plaintiffs' claims as a matter of law" given that Defendant's motion raised "disputed issues of fact," including "whether the landmark status was recorded in any public records" as of the date of the Policy. ECF No. 33-11 at 3 (state court order); *see also* ECF No. 34 at 18 (Defendant's instant motion to dismiss alleging that "no evidence appeared in the public real property records as of the date of the Policy that th[e] Property had been designated a historic landmark.")

Defendant subsequently appealed the denial of its motion. *See* ECF No. 33-10.  On appeal, the Appellate Division, First Department, reversed the trial court's decision solely on procedural grounds, opining that although "plaintiffs' delay in serving the complaint was excusable," plaintiffs failed to submit an "affidavit of merit" to the trial court that warranted "dismiss[al] [of the case] without prejudice." ECF No. 33-10 at 2-3.  Plaintiffs then recommenced the action in state court.

4

Obviously displeased with the reception of its substantive arguments from the state court, Defendant removed this action to this Court on April 27, 2021.  Plaintiffs filed their Amended Complaint on July 13, 2021.  Defendant, on September 2, 2021, filed this motion duplicating much of what had already been addressed and rejected in state court, now hoping to get a different result.[1]

## APPLICABLE STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 664.

"In deciding a motion to dismiss, the Court must limit its analysis to the four corners of the complaint." *Exec. Photo, Inc. v. Norrell*, 765 F. Supp. 844, 845 (S.D.N.Y. 1991).  "The Court must accept as true all well-pleaded factual allegations in the complaint, and 'draw[] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013).

The motion to dismiss is "'not the appropriate stage to raise affirmative defenses, which may be 'riddled with questions of fact.'" *Graham Hanson Design LLC v. 511 9th LLC*, No. 10 CIV. 5493 KMW, 2011 WL 744801, at *3 (S.D.N.Y. Feb. 24, 2011).  "Questions of fact [are] not

---

[1] Plaintiffs believe that the analyses undertaken by the state court addressing the substantive merits of Defendant's arguments should inform this Court's analyses and determination of the case.

suited for resolution at the motion to dismiss stage." *Barton v. Pret A Manger (USA) Ltd.*, No. 1:20-CV-04815 GHW, 2021 WL 1664319, at *5 (S.D.N.Y. Apr. 27, 2021); *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021). Accordingly, a motion to dismiss raising questions of fact must be denied. *Vogel v. Boris*, No. 20 CIV. 9301 (VM), 2021 WL 1668072, at *7 (S.D.N.Y. Apr. 28, 2021).

Defendant, in this case, asserts four bases to dismiss Plaintiffs' Amended Complaint, including that: (1) Plaintiffs are not entitled to indemnification under the Policy; (2) the state court decision denying Defendant's motion to dismiss is erroneous; (3) Plaintiffs are not entitled to bring a declaratory judgment claim because it is allegedly duplicative of Plaintiffs' breach of contract claim; and (4) Plaintiffs' negligence claim allegedly has no basis in law. *See* ECF No. 11-19, 34 at 27, 29, 30.

Defendant is wrong on all points. First, the express language of the Policy plainly establishes that Plaintiffs are entitled to indemnification for Defendant's failure to report the Property's landmarked status in the title report. Second, the state court properly decided the matter, and this Court should come to the same conclusion. Third, Plaintiffs are entitled to bring both breach of contract and declaratory judgment claims under New York law. Finally, Plaintiffs bring a valid negligence claim because Defendant, as an insurer, can be held liable for negligence if it fails to exercise reasonable care in its performance.

6

**ARGUMENTS**

**PLAINTIFFS' COMPLAINT ASSERTS COGNIZABLE
CAUSES OF ACTION, AND DEFENDANT'S
MOTION TO DISMISS SHOULD BE DENIED**

**1.     The "Covered Risks" Section of the Policy Entitles Plaintiffs to Indemnification**

The plain language of the Policy's "Covered Risks" section insures Plaintiffs against title

defects.  "Covered Risks" subsection (2)(a) expressly states:

> Subject to the exclusions from coverage, the exceptions from coverage contained in Schedule B and the conditions, First American Title Insurance Company, a Nebraska corporation (the "Company") *insures*, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, *against loss or damage*, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

> 2.     *Any defect in* or lien or encumbrance on *the Title*. This Covered Risk *includes but is not limited to insurance* against loss from

> (a) A *defect* in the Title *caused* by
> …

>      (iii) a document affecting Title *not properly created*, executed, witness, sealed, acknowledged, notarized, or delivered; [or]

>      (vi) a document *not properly filed, recorded, or indexed in the Public Records* including failure to perform those acts by electronic means authorized by law;

> …

> 5.     The violation or *enforcement* of *any law, ordinance, permit, or governmental regulation* (including those relating to building and zoning) *restricting*, regulating, prohibiting, or relating to

> (a) the occupancy, *use, or enjoyment of the Land*;
> (b) the *character*, dimensions, or location *of any improvement erected on the Land*;
> (c) the subdivision of land; or
> (d) environmental protection

if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

ECF No. 33-5 at 2 (emphasis added).

In this case, the plain and ordinary meaning of the terms of the Policy insure Plaintiffs against "any" title defects in the title report delivered by Defendant. Indeed, the Policy, under Subsections (2)(a)(iii) and (vi), expressly define the term "defect" as "(iii) a document affecting Title not properly created," or "(vi) a document not properly filed, recorded, or indexed in the Public Records." These definitions of "defect" logically include the Defendant's allegation of an "unrecorded," or absent, "designation" of the Property's landmarked status in the public records. ECF No. 34 at 18 (Defendant's motion contends that "no evidence appeared in the public real property records as of the date of the Policy that th[e] Property had been designated a historic landmark"). To exclude the "unrecorded designation" of the Property's landmarked status from the definition of "defect" would be inapposite to the plain language of Subsections (2)(a)(iii) and (vi), and would render those provisions meaningless under the Policy.[2]

The Policy is evidence of Defendant's obligation to insure Plaintiffs' title against "any" defects. The Policy, as a written instrument, memorializes Plaintiffs' legal entitlement to a title and title report free from defects, and if defects exist, that Plaintiffs have a right to indemnification. In other words, Subsection (2)(a) of the Policy is triggered when the Defendant delivers a defective title report to the Plaintiffs, which, in turn, triggers Defendant's obligation to indemnify Plaintiffs under the "Covered Risks" section, subsection 2(a), of the Policy. This is the breach-of-contract case before the Court.

---

[2] The foregoing is not a concession that the landmark designation was not recorded in New York's public records. Rather, Plaintiffs allege that it was recorded in the public records.

Tellingly, Defendant deliberately ignores Subsection (2)(a) of the Policy to escape indemnifying Plaintiffs under the Policy. Instead, Defendant relies on Subsection 5 of the "Covered Risks" section (see language above), which, ironically, does **not** support Defendant's position **denying** indemnification, but supports Plaintiffs' position affording (or entitling) indemnification, as discussed below.

Preliminarily, Subsection 5 does not preclude Plaintiffs from indemnification under the Policy. Defendant contends that Subsection 5 allegedly "provides coverage for specific regulatory restrictions pertaining to real property that are *recorded* in the chain of title for real property, but not those that are not." ECF No. 34 at 20. This interpretation of Subsection 5 is nonsense. Nowhere in Subsection 5 does it require a "specific regulatory restriction" to be "recorded" in order for Plaintiffs to be entitled to indemnification. In fact, Subsection 2(a) says otherwise, as explained above. Rather, the plain language of Subsection 5 (provided above) expressly states that Plaintiffs are insured against the "enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that ***restrict[], regulat[e], prohibit[], or relat[e] to …*** (a) the occupancy, use, or enjoyment of the Land; or (b) the character, dimensions, or location of any improvement erected on the Land." In other words, Plaintiffs are covered under the Policy if any governmental authority ***restricts*** Plaintiffs' ability to use and enjoy the Property, ***or restricts*** Plaintiffs' ability to use the Property for an intended purpose involving "improvement[s] erected on the Land." Such language in Subsection 5 plainly supports Plaintiffs' position that Defendant has an obligation to insure Plaintiffs against "any" defects that interfere with Plaintiffs' use and enjoyment of the Property, and inability to renovate or develop the Property because of the Property's landmarked status.

**2.     Policy "Exclusion 1(a)," Relied On by Defendant, Does Not Support Denial of Plaintiffs' Indemnification Claim**

Defendant contends that Exclusion 1(a)(ii) of the Policy "exclude[s] from coverage" Plaintiffs' indemnification claim. ECF No. 34 at 23.

Exclusion 1(a) states that:

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

*(a)*  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning restricting, regulating, prohibiting, or relating to
            (i) the occupancy, use, or enjoyment of the Land;
            *(ii)* the character, dimensions, or location of any improvement erected on the Land;
            (iii) the subdivision of land; or
            (iv) environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

ECF No. 33-5 at 3 (emphasis added).

In essence, Defendant argues that Plaintiffs are not entitled to indemnification because Exclusion 1(a) purportedly does not cover "matters … that arise by reason of: (a) any law, ordinance, permit, or governmental regulation (including those relating to building and zoning" restricting, regulating, prohibiting, or relating to … (ii) the character … of any improvement of the land." ECF No. 34 at 23 (citing Defendant's motion to dismiss).

Again, Defendant's argument is without merit.  Exclusion 1(a) does ***not*** exclude Plaintiffs' indemnification claim because Exclusion 1(a) ***concerns*** "law[s], ordinance[s], permit[s], or governmental regulation[s] … restricting …. improvement[s] of the land," while Plaintiffs' indemnification claim ***concerns*** title defects.  This makes sense logically because a Title Company (and property purchaser) cannot defy a government regulation, such as a landmark designation on

property.  A Title Company therefore insures against **defects** in the title report that fail to report a property's landmark designation, as in this case.  Accordingly, Exclusion 1(a) does not support Defendant's decision to deny Plaintiffs' indemnification claim.[3]

### 3.   Policy "Exclusion 3(a)," Relied On by Defendant, Also Does Not Support Denial of Plaintiffs' Indemnification Claim

Defendant also argues that Exclusion 3(a) of the Policy "exclude[s]" coverage because "Plaintiffs purchased the Property 'as is' and subject to all governmental or quasi-governmental regulations, ordinances, or stop work orders, including the historic designation at issue." ECF No. 34 at 11; *see also* ECF No. 34 at 27 (Plaintiffs[] … accepted title 'as is, where is,' and subject to all governmental restrictions—including those impressed by the LPC").

Exclusion 3(a) states as follows:

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

3. Defects, liens, encumbrances, adverse claims, or other matters

(a)  Created, suffered, assumed, or agreed to by the Insured Claimant;

ECF No. 33-5 at 3.

Yet again, Defendant's argument is nonsense. Nothing in the plain language of Exclusion 3(a) supports Defendant's argument that Plaintiffs' purchase of the Property "as is' and subject to all governmental or quasi-governmental regulations, ordinances, or stop work orders," disqualifies Plaintiffs from coverage under the Policy.

Rather, Exclusion 3(a) **concerns** "defects, liens, encumbrances, adverse claims, or other matters … [c]reated, **suffered**, assumed, or agreed to by the Insured Claimant."  Firstly, Plaintiffs

---

[3] Plaintiffs note that all cases Defendant cites are inapposite because these cases involve government regulations restricting land use that are irrelevant to the case before the Court concerning title and title report defects.

note that the term "suffered" is understood in its archaic form, which means "tolerate." *See Suffer Definition*, LEXICO.COM, https://www.lexico.com/en/definition/suffer (last visited Oct. 7, 2021). The definition, "tolerate," is "reasonable" in "the context" of the term, "suffered," and its "surrounding terms," which describe a "creation" or "acceptance" of the defect by Plaintiffs. *Integra Telecom, Inc. v. Twin City Fire Ins. Co.*, No. CIV.08-906-AA, 2010 WL 1753210, at *6 (D. Or. Apr. 29, 2010). The definition of "suffered" as "tolerate" also makes sense "in the context of the Policy as a whole." *Id*. Otherwise, inclusion of the term "suffered" in Exclusion 3(a) would be nonsensical.

Secondly, Exclusion 3(a) does ***not*** concern government regulations that govern the "as is" condition of the Property upon purchase. Instead, and thirdly, Exclusion 3(a) addresses "***defects*** … [c]reated, suffered, assumed, or agreed to by the Insured Claimant," which is not the case here. Plaintiffs have not "created" the title defect (concerning the landmark designation). The title defect existed without Plaintiffs' knowledge—knowledge that should have been made available to Plaintiffs and that should have come from Defendant's title report. Moreover, Plaintiffs did not "suffer, assume, or agree" to the title defect, they were ignorant of it, and once they became aware of the defect, they submitted claims for indemnification to Defendant. When Defendant denied these claims, Plaintiffs brought this lawsuit seeking indemnification under the Policy. Accordingly, Defendant's argument fails.

## 4.     Defendant Raises a Question of Fact that Precludes Dismissal of this Action

Defendant contends that the Policy purportedly does not cover the title defect in the title report because the "public real property records" allegedly had "no evidence" as "of the date of the Policy" that the "Property had been designated a historic landmark." ECF No. 34 at 18.

However, Defendant's assertion that "no evidence" purportedly existed of the Property's landmarked status at the time Defendant conducted its title search raises a question of fact for a jury or trier of fact to resolve—it is **not** for the Defendant to ***declare as fact*** at this stage of the litigation. *Hamelin v. Etna Abstract Corp.*, 174 Misc. 2d 712, 717 (Sup. Ct. Franklin Cnty. 1997) ("It is clear … that a fact finder must decide whether Defendant breached its duty to Plaintiff in conducting the title search.").

Moreover, whether the Defendant exercised "reasonable diligence" in "investigating" public records to produce the title report is another question of fact for a jury or trier of fact to resolve. *Washington Temple Church of God in Christ, Inc. v. Glob. Properties & Assocs., Inc.*, No. 29690/05, 2012 WL 5187556, *4 (Kings Cnty. Sup. Ct. 2012) ("questions of fact exist with regard to whether … [title searcher was] negligen[t] in conducting the title search"); *see also Phillips v. Kidder, Peabody & Co.,* 782 F. Supp. 854, 859 (S.D.N.Y. 1991) ("question of whether a plaintiff exercised reasonable diligence in investigati[on] … is generally a jury determination," especially where "the facts of a case lead to conflicting inferences and conclusions"). Therefore, discovery is necessary in this case, and Defendant's motion should be denied on this basis alone. *237 Park Invs. LLC v. Royal & Son All.*, No. 03 CIV. 63024 (PKC), 2004 WL 385067, at *3 (S.D.N.Y. Mar. 1, 2004) ("since questions of fact appear to exist at this early stage, and discovery has not even commenced in this action, it would be futile" to convert a motion to dismiss into a motion for summary judgment, and therefore defendant's "motion to dismiss is denied").

5.   **Plaintiffs' Claim for Declaratory Judgment is Not Duplicative of its Breach of Contract Claim**

Defendant claims that Plaintiffs' cause of action for declaratory judgment should be dismissed because the claim is purportedly duplicative of the cause of action for breach of contract. ECF No. 34 at 29.  Defendant is wrong.

It is well established that in the context of insurance jurisprudence under New York law, plaintiffs are permitted to pursue parallel theories of breach of contract and declaratory judgment. *Kings Infiniti Inc. v. Zurich American Ins. Co.*, No. 501914/2013, 2014 WL 1328274, *7 (Sup. Ct. Kings Cnty. 2014) ("In the insurance context, insureds have been permitted to simultaneously seek a judgment declaring the insurer's obligation to them as well as the further relief of damages for breach of contract.); *see also Kevin Spence & Sons, Inc. Boar's Head Provisions Co., Inc.*, 5 A.D. 3d 352, 354 (2d Dep't 2004) ("The plaintiff's cause of action seeking a declaration of the reciprocal rights and obligations of the parties to the letter agreement is not duplicative of the breach of contract cause of action.").

Indeed, breach of contract and declaratory judgment claims are routinely and simultaneously brought in a complaint.  *See Kings Infiniti Inc.*, 2014 WL 1328274, *6 (Sup. Ct. Kings Cnty. 2014) (Supreme Court breach of contract and declaratory judgment claims brought simultaneously); *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 21 N.Y.3d 324, 333 (2013) (Court of Appeals deciding merits of case in which breach of contract and declaratory judgment claims simultaneously brought). *See also Conergics Corp. v. Dearborn Mid-W. Conveyor Co.*, 144 A.D.3d 516, 517 (1st Dep't 2016) (same by First Department, Appellate Division); *Kings Park Indus., Inc. v. Affiliated Agency, Inc.*, 22 A.D.3d 466, 466 (2d Dep't 2005) (same by Second Department, Appellate Division); *Schenectady Int'l Inc. v. Emps. Ins. of Wausau*, 245 A.D.2d 754, 754 (3d Dep't 1997) (same by Third Department, Appellate Division); *Carrier Corp. v. Allstate*

14

*Ins. Co.*, 187 A.D.3d 1616, 1617 (4th Dep't 2021) (same by Fourth Department, Appellate Division).

Here, Defendant has refused to honor Plaintiffs' rights under the Policy. Therefore, Plaintiffs, as the insured, are justified in bringing their breach of contract claim. Moreover, Plaintiffs, as the "insured, may bring a claim against [the] insurer seeking a declaration that the loss to [Plaintiffs] … was covered under the insurance policy issued by the insurer." *Kings Infiniti Inc.*, 2014 WL 1328274, *6; *see also Carrier Corp.*, 187 A.D.3d at 1617 ("declaratory judgment and breach of contract action seeking [] declarations of the rights and obligations of the parties under liability insurance policies"); *Kings Park Indus.*, 22 A.D.3d at 466-67 (action to "recover damages for breach of contract and for declaratory relief … that [among other things, defendant] is obligated to hold harmless and indemnify the plaintiff for any loss it may sustain by reason of the absence of certain excess insurance coverage"); *Conergics Corp.*, 144 A.D.3d at 516-17 ("counterclaims for breach of contract for refusing to provide [] indemnification and for a declaration that plaintiffs are obligated to provide … such indemnification"). Therefore, Plaintiffs properly brought a declaratory judgment claim simultaneously with their breach of contract claim, and Plaintiffs' declaratory judgment claim should not be dismissed.

**6.    Plaintiffs' Negligence Claim Should Not be Dismissed Because it Has a Basis in New York Law**

> **a.    Defendant is Liable for Negligence Because it Had and Has a Legal Duty to Plaintiffs**

Defendant alleges that it is not "liable to Plaintiffs for negligence" because it does "not owe [a duty] or [has not] violate[d] a duty" to Plaintiffs. ECF No. 34 at 30.  Defendant is wrong.

An insurer can be held liable for negligence because it has a legal duty to exercise "reasonable care" in "perform[ing] the contract." *Carleton v. Lombard, Ayers & Co.*, 149 N.Y. 137, 149 (1896).

The New York Court of Appeals case of *Carleton v. Lombard, Ayers & Co.* is instructive. In *Carleton*, the defendant-manufacturer delivered "unmerchantable" goods to the plaintiff-buyer. The goods were "unmerchantable" and "unfit" for delivery, *id.* at 144, because they had "latent [or hidden] defects" arising from the process of manufacture which "the defendant could have guarded against by the exercise of reasonable care." *Id.* at 149.  The plaintiff-buyer subsequently demanded that the defendant-manufacturer indemnify it from loss because plaintiff-buyer "had in all respects performed its contract and was not liable for the result." *Id.* at 141.

The Court of Appeals ruled that the law imposes "an obligation or duty on the part of the manufacturer" to sell goods "free from concealed defects." *Carleton*, 149 N.Y. at 138.  The court also ruled that the defendant-manufacturer was "liable for any latent defect arising from the manner in which the article [or good] was manufactured or from the use of defective materials," *id.* at 144, in the "interest of commercial honesty and fair dealing." *Id.* at 144.

The court further ruled that "when a buyer has no opportunity to inspect the article, or when [..] inspection is impracticable or useless, … the law implies a warranty that [a good] is reasonably fit for the use for which it was designed." *Carleton*, 149 N.Y. at 146.  Accordingly, the court concluded that defendant-manufacturer was "bound to deliver an article [or good] that was free from latent or hidden defects that rendered it unmerchantable." *Id.* at 153.

As in *Carleton*, Plaintiffs in this case received from Defendant an "unmerchantable" title report unfit for delivery to Plaintiffs.  The title report had a "hidden" defect arising from the process

of its manufacture by failing to report that the Property was located on a landmarked site within a landmarked historic district, despite having been designated as such in New York public records.

Defendant had a duty to exercise reasonable care in the creation of the title report, but failed to do so.  Moreover, Plaintiffs had no opportunity to inspect the report prior to its delivery and, upon delivery, any such inspection of the report would have been impracticable because the defect was ***not*** "discernible upon inspection." *Carleton*, 149 N.Y. at 144.  Therefore, Plaintiffs are entitled to indemnification through its insurance coverage, especially after performing its part of the contract by paying Defendant for the report. Accordingly, Plaintiffs are entitled to relief under a negligence theory.

In an analogous case, *Chrysler First Fin. Servs. Corp. of Am. v. Chicago Title Ins. Co.*, plaintiff sought to recover damages based upon the "uncontroverted fact that while the defendant did report and exempt from coverage the subject first mortgages, it inaccurately set forth the amount of said mortgages in its title reports." 156 Misc. 2d 814, 817-18 (Sup. Ct. Nassau Cnty. 1993).  The New York Supreme Court determined that "[d]efendant's argument that it performed its contractual duty by accurately reporting the existence of prior mortgages, liens or charges, without accurately reporting the amount of same, lacks merit." *Id*. at 819.  Put simply, the court ruled that the defendant had a contractual duty to deliver a complete and accurate title report to plaintiff, which defendant failed to do.  The court reasoned that plaintiff "justifiably relies upon the ***accuracy*** of the reported search not only as to the existence of prior encumbrances but as to the amounts thereof," and the "inaccuracy of the title search" ultimately "affect[s] the validity and extent of plaintiff's interest in the subject premises." *Id*. (emphasis added).  Thus, the court concluded that plaintiff was "entitled to the benefit of its bargain" with defendant. *Id*. at 821.

As in *Chrysler*, Defendant in this case failed to satisfy its duty to deliver a complete and accurate title report to Plaintiffs. As a result, Plaintiffs, like the *Chrysler* plaintiff, suffered damages.  As in *Chrysler*, Plaintiffs justifiably relied upon the accuracy of the title report search, and the inaccuracy of the search and reporting led Plaintiffs to purchase the Property, which has negatively affected Plaintiffs' interest in the Property.  Now, Plaintiffs have been damaged because Defendant's failure to deliver an accurate title report has led Plaintiffs to purchase Property they cannot develop because of the Property's landmarked status. Defendant's failure to deliver an accurate report has ultimately interfered with Plaintiffs' use and enjoyment of the Property and diminished the Property's value to Plaintiffs.  Consequently, Defendant has denied Plaintiffs their benefit of the bargain and Plaintiffs are entitled to damages under a negligence theory.

> **b.    Plaintiffs' Negligence Claim Has Not Been Foreclosed as a Result of Any Purported Merger Between the Certificate of Title and Policy**

Defendant also argues that Plaintiffs' negligence claim has been foreclosed. ECF No. 34 at 31-32.  In support, Defendant explains that the Certificate of Title purportedly merged with the insurance Policy, which "foreclose[s]" an "action for damages arising … in tort." *Id*. at 31 (citing to *Citibank v. Chicago Tit. Ins. Co.*, 214 A.D. 2d 212 (1st Dep't 1995) and *Cane v. First American Tit. Ins. Co. of N.Y.*, No. 30273/2012, 2015 WL 2441883 (Sup. Ct. Suff. Cnty. May 07, 2015)). The argument is that the Policy's purported merger with the Certificate of Title "void[s]" the Certificate of Title, leaving only the Policy, and "as the [P]olicy expressly provides that all causes of action are restricted to its terms," there is no basis for Plaintiffs' negligence claim. *Id*. at 32 (citing *Timac Realty v. G&E Tremont, LLC*, No. 652370/11, 2013 WL 2154896 (Sup. Ct. N.Y. Cnty. Mar. 27, 2013)).[4]

---

[4] Defendant also alleges that the "Title Report terminated upon the issuance of the Policy." ECF No. 34 at 32.  This appears to be a mistake because the relevant section of Defendant's brief addresses merger of the Certificate of Title with the Policy, and the subsequent termination of the Certificate of Title. *See id*. at 31-32.

Again, Defendant's argument is all wrong.  Even if merger of the Certificate of Title and Policy leaves only the Policy and its terms, the Policy at issue in this case, as discussed above, expressly provides that Plaintiffs are entitled to indemnification for the Defendant's failure to report the Property's landmarked status. The terms of the Policy also do not expressly preclude Plaintiffs from bringing a negligence claim as a result of any purported merger between the Certificate of Title and Policy. *Cruz v. Commonwealth Land Title Ins. Co.*, 157 A.D.2d 333, 337-38 (1st Dep't 1990) (instructing trial court to "reinstate the [] cause of action for negligence" because the Certificate of Title at issue in the case did not "evince[e] a clear intention to merge any negligence in the [title] search into the subsequently issued [P]olicy").

Moreover, Defendant's own cited authority, *Citibank*, holds that any foreclosure of a tort claim, as a result of a merger between the Certificate of Title and Policy, requires the Certificate of Title to include an express "***provision*** that ***any liability*** thereunder ***terminate[]*** upon the issuance of the title policy." 214 A.D. 2d at 217 (emphasis added). Such a provision is nowhere to be found in the Plaintiffs' Certificate of Title.  Therefore, Plaintiffs properly brought a cause of action for negligence.

**7.     The State Court Properly Decided the Defendant's Motion to Dismiss[5]**

Defendant contends that the state court "misconstrued the terms of the Policy" in determining whether Plaintiffs are entitled to indemnification. *See* ECF No. 34 at 27.

As discussed above, the Policy expressly provides that Plaintiffs are entitled to indemnification for Defendant's failure to report the Property's landmarked status in the title report.  Moreover, Defendant's motion raises questions of fact for a jury or trier of fact to resolve.

---

[5] Although the Appellate Division, First Department, reversed the trial court's decision on procedural grounds due to Plaintiffs' failure to timely serve the Complaint and file an affidavit of merit, this does not detract from the trial court's finding that Defendant's motion to dismiss fails on the merits. *See* ECF No. 33-11, at 3-4 (trial court decision); ECF No. 33-10, at 3 (appellate opinion).

Therefore, the state court did not "misconstrue the terms of the Policy," but correctly denied Defendant's motion to dismiss on the merits.  This Court should similarly deny the Defendant's motion to dismiss.

## **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully ask this Court to deny Defendant's motion to dismiss.

Dated:      New York, New York
            October 7, 2021

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP


/s/ Matthew E. Hearle
By: Matthew E. Hearle
    Farida Ali
    1501 Broadway – 22nd Floor
    New York, New York 10036
    (212) 221-5700

*Attorneys for Plaintiffs*
*Fawn Second Avenue LLC, 118 Second Avenue LLC,*
*and SFP 1881 Holdings LLC*