UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAWN SECOND AVENUE LLC, 1881 SECOND AVENUE LLC, and SFP 1881 HOLDINGS LLC,<br><br>               Plaintiffs,<br><br>        -v.-<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>               Defendant. | 21 Civ. 3715 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Fawn Second Avenue LLC, 1881 Second Avenue LLC, and SFP 1881 Holdings LLC (collectively, "Plaintiffs") are the holders of a title insurance policy (the "Policy") that was issued by Defendant First American Title Insurance Company in connection with Plaintiffs' purchase of real property located at 82 Second Avenue in New York, New York (the "Property"). Following their acquisition of the Property, Plaintiffs were surprised to learn that years earlier the New York City Landmarks Preservation Commission (the "LPC") had designated the Property as a landmark, which impeded Plaintiffs' plans to use and improve the Property. Plaintiffs sent Defendant a notice of claim under the Policy, demanding indemnification for the ostensible diminution in the Property's value stemming from this unexpected landmark designation. Defendant rejected the insurance claim, which prompted Plaintiffs to initiate this action alleging Defendant's breach of its coverage obligations under the Policy and its negligence in not disclosing the Property's landmark designation.

Defendant now moves to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that it owed Plaintiffs no duty to disclose the Property's landmark designation and that Plaintiffs seek indemnification for losses that are not covered by the Policy. For the reasons outlined below, the Court grants Defendant's motion to dismiss.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Property and Plaintiffs' Insurance Claim

Plaintiffs purchased the Property, located at 82 Second Avenue, New York, New York, by deed on November 17, 2015. (Am. Compl. ¶ 9; *see also* Sussner Decl., Ex. A). Incident to the purchase of the Property, Defendant issued to Plaintiffs a title insurance policy. (Am. Compl. ¶ 11; Sussner Decl., Ex. E ("Policy")). Approximately two years later, Plaintiffs endeavored to make improvements to the Property, including installing a roof railing, replacing windows, painting the storefront, and adding signage. (Am. Compl. ¶ 15). Unbeknownst to Plaintiffs, several years earlier, on October 9, 2012, the

---

[1]    This Opinion draws its facts from the Amended Complaint ("Am. Compl." (Dkt. #27)), the well-pleaded allegations of which are taken as true on this motion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also relies, as appropriate, on the exhibits attached to the declaration of Jaimee Katz Sussner ("Sussner Decl., Ex. [ ]" (Dkt. #33)), which include several documents that are either incorporated by reference in the Amended Complaint or proper subjects of judicial notice. *See United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106-07 (2d Cir. 2021) (describing materials extraneous to the pleadings that courts may consider on a motion to dismiss).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #34); Plaintiffs' memorandum of law in opposition to Defendant's motion to dismiss as "Pl. Opp." (Dkt. #38); and Defendant's reply memorandum of law as "Def. Reply" (Dkt. #40).

Property had been designated by the LPC as part of the East Village/Lower East Side Historic District.  (*Id.* at ¶¶ 13-14).  On or about October 3, 2017, Plaintiffs received three separate warning letters from the LPC demanding that their work to improve the Property "stop immediately" because the Property is located "on a landmarked site or within a landmarked historic district." (*Id.*).[2]

On October 12, 2017, Plaintiffs sent a letter to Defendant with a notice of claim under the Policy seeking insurance coverage for the diminished value of the Property incident to its landmark status.  (Am. Compl. ¶ 16).  By letters dated December 5, 2017, and February 21, 2018, Defendant denied Plaintiffs' claim for coverage.  (*Id.* at ¶ 17).

### 2.    The Title Report and the Title Insurance Policy

In connection with Plaintiffs' acquisition of the Property, on or about November 16, 2015, Defendant issued a final title report covering the Property. (Am. Compl. ¶ 10; Sussner Decl., Ex. C ("Title Report")).  The first page of the Title Report is a Certificate of Title, which certified that "an examination of title to the [Property] has been made in accordance with [Defendant's] usual

---

[2]    Pursuant to Section 25-305 of the New York City Administrative Code, except as otherwise provided:

> [I]t shall be unlawful for any person in charge of a landmark site or an improvement parcel or portion thereof located in an historic district … to alter, reconstruct or demolish any improvement constituting a part of such site or constituting a part of such parcel and located within such district or containing an interior landmark, or to construct any improvement upon land embraced within such site or such parcel and located within such district, … unless the commission has previously issued a certificate of no effect on protected architectural features, a certificate of appropriateness or a notice to proceed authorizing such work[.]

N.Y.C. Admin. Code § 25-305(a)(1).

procedure" and that Defendant "agrees to issue its standard form of title insurance policy … after the closing of the transaction[.]" (Title Report 1). The Certificate of Title further provided that "[t]his Agreement to insure shall terminate … upon the issuance of title insurance in accordance herewith." (*Id.*). Similarly, the Certificate of Title included the following warning, presented in bold text and all capital letters: "This report is not a title insurance policy!  Please read it carefully.  The report may set forth exclusions under the title insurance policy and may not list all liens, defects, and encumbrances affecting title to the property.  You should consider this information carefully." (*Id.*). The remainder of the Title Report comprised the results of Defendant's title search, which did not reveal that the Property was located on a landmarked site or within a landmarked historic district. (*See generally id.* at 3-17).

On November 17, 2015, Defendant issued the Policy, titled Owner's Policy of Title Insurance, bearing the policy number 3019-749066NY6.  (Am. Compl. ¶ 11; *see also* Policy).  The Policy is structured to insure against loss or damage sustained or incurred by reason of an enumerated list of "covered risks," which are expressly "subject to the exclusions from coverage, the exceptions from coverage contained in Schedule B and the Conditions[.]" (Policy 1).

Plaintiffs invoke two covered risks as establishing a basis for coverage here.  The first is Covered Risk § 2(a), titled "Any defect in or lien or

4

encumbrance on the Title." (Policy, Covered Risk § 2(a)). This Covered Risk

"includes but is not limited to insurance against loss from":

> (a) A defect in the Title caused by ...
>
> (iii) a document affecting Title not properly created, executed, witness, sealed, acknowledged, notarized, or delivered; [or]
>
> (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law[.]

(*Id.*). The second is Covered Risk § 5, which provides coverage for:

> The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
>
> (a) the occupancy, use, or enjoyment of the Land;
>
> (b) the character, dimensions, or location of any improvement erected on the Land;
>
> (c) the subdivision of land; or
>
> (d) environmental protection
>
> if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

(*Id.*, Covered Risk § 5). The Policy defines "Public Records," in relevant part, as:

> Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.

(*Id.*, Conditions § 1(i)).

The Policy also contains a list of exclusions, or matters that "are expressly excluded from the coverage of this policy[.]"  (Policy, Exclusions). Defendant cites two Policy exclusions that purportedly preclude coverage for Plaintiffs' losses, irrespective of whether they involve a covered risk.  The first is Exclusion 1, which provides that Defendant "will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of":

> (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
>
> (i)  the occupancy, use, or enjoyment of the Land;
>
> (ii)  the character, dimensions, or location of any improvement erected on the Land;
>
> (iii) the subdivision of land; or
>
> (iv) environmental protection;
>
> or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
>
> (b) Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

(*Id.*, Exclusions § 1(a)-(b)).  The second is Exclusion 3, which provides that Defendant will not provide insurance coverage for "[d]efects, liens, encumbrances, adverse claims or other matters … created, suffered, assumed, or agreed to by the Insured Claimant[.]"  (*Id.*, Exclusions § 3(a)).

6

**B.     Procedural Background**

Prior to initiating the instant action, on May 31, 2019, Plaintiffs filed a complaint in New York State Supreme Court, New York County, arising out of the same insurance claim that forms the basis of this suit.  *See Fawn Second Ave. LLC* v. *First Am. Title Ins. Co.*, Index No. 655735/2018 (N.Y. Sup. Ct., summons with notice filed Nov. 16, 2018).  (Sussner Decl., Ex. I).  By Decision and Order on Motion dated November 14, 2019, New York State Supreme Court Justice Arthur F. Engoron credited Plaintiffs' interpretation of the Policy and denied Defendant's motion to dismiss Plaintiffs' state court complaint. (*Id.*, Ex. K).  On March 11, 2021, the Appellate Division, First Judicial Department, reversed the trial court's decision and dismissed Plaintiffs' claims without prejudice because Plaintiffs had failed to timely serve the complaint or supply an affidavit of merit after filing the summons with notice.  *See Fawn Second Ave. LLC* v. *First Am. Title Ins. Co.*, 140 N.Y.S.3d 399, 399-400 (1st Dep't 2021).  (Sussner Decl., Ex. J).  Due to this procedural defect, the Appellate Division declined to reach the merits of Plaintiffs' claims.  *Id.*

On April 9, 2021, Plaintiffs reinstituted their action against Defendant, with the filing of the underlying complaint in this action in New York State Supreme Court.  (Dkt. #1-1).  Defendant timely removed this action to federal court on April 27, 2021.  (Dkt. #1).  On May 12, 2021, Defendant submitted a letter indicating its intent to move to dismiss the underlying complaint (Dkt. #10), to which Plaintiffs responded five days later (Dkt. #14).  The Court held a hearing on June 8, 2021, at which the parties discussed Defendant's

contemplated motion to dismiss and the status of the parties' ongoing settlement negotiations.  (*See* Minute Entry of June 8, 2021; Sussner Decl., Ex. F (transcript)).  Approximately one month later, Plaintiffs filed a letter communicating their intention to amend their pleadings.  (Dkt. #24).

Plaintiffs filed the Amended Complaint on July 13, 2021.  (Dkt. #27). Three days later, the parties proposed a briefing schedule for Defendant's motion to dismiss, which the Court endorsed on July 19, 2021.  (Dkt. #28-29). Thereafter, Defendant filed its motion to dismiss the Amended Complaint on September 2, 2021.  (Dkt. #32-34).  Plaintiffs filed their opposition papers on October 7, 2021 (Dkt. #38-39), and the briefing was completed following the submission of Defendant's reply brief on November 9, 2021 (Dkt. #40).

## DISCUSSION

In the Amended Complaint, Plaintiffs assert three causes of action for declaratory relief, breach of contract, and negligence, all stemming from their core allegation that Defendant had an obligation to disclose the Property's landmark status prior to Plaintiffs' purchase of the Property.  The Court begins by articulating the appropriate legal standards on a motion to dismiss before turning to each of Plaintiffs' claims.

### A.   Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible

'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Allco Fin. Ltd.* v. *Klee*, 861 F.3d 82, 94-95 (2d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks, alterations, and citation omitted); *see also Hamilton* v. *Westchester Cnty.*, 3 F.4th 86, 90-91 (2d Cir. 2021) (explaining that on a motion to dismiss "[w]e accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations.").

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This narrow universe includes "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (citation omitted). On this motion, the Court considers some, but not all, of the documents attached to the Sussner

Declaration, including the Title Report (Sussner Decl., Ex. C) and the Policy (*id.*, Ex. F), both of which are incorporated by reference in and integral to the Amended Complaint.  The Court additionally takes judicial notice of public documents relating to the Property, including the Bargain and Sale Deed (*id.*, Ex. A), the Property's chain of title as reflected by the Automated City Register Information System website ("ACRIS") (*id.*, Ex. G (search results for the Property)), and the Notice of Landmark Designation for the Property (*id.*, Ex. H). *See, e.g.*, *Cummins* v. *Select Portfolio Servicing, Inc.*, No. 14 Civ. 5121 (MKB) (LB), 2016 WL 4766237, at *1 n.2 (E.D.N.Y. Sept. 13, 2016) (accessing and taking judicial notice of publicly available ACRIS records); *see also Wells Fargo Bank, N.A.* v. *Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (explaining that it is "clearly proper to take judicial notice" of "documents retrieved from official government websites").  Moreover, the Court takes judicial notice of the publicly available documents from Plaintiffs' prior state court litigation, including the complaint in that action (Sussner Decl., Ex. I); the New York Supreme Court's November 14, 2019 Decision and Order on Motion (*id.*, Ex. K); and the Appellate Division's March 11, 2021 Decision and Order (*id.*, Ex. J).  *See Kramer* v. *Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").[3]

---

[3]     The Court does not consider the Agreement of Sale for the Property entered between Plaintiffs and the previous owner of the Property (Sussner Decl., Ex. B), as it is neither publicly available, incorporated by reference in the Amended Complaint, nor integral to

**B.      Plaintiffs Have Not Stated Claims for Breach of Contract or Declaratory Judgment**

Plaintiffs' claims for declaratory relief and breach of contract are substantively identical, inasmuch as both rise or fall on whether the Policy provides coverage for Plaintiffs' losses stemming from the diminution in the Property's value due to its undisclosed landmark status.  In attempting to vindicate their purported right to coverage, Plaintiffs seek a declaration that the Policy obligates Defendant to indemnify Plaintiffs for the losses associated with the Property's landmark designation.  Likewise, Plaintiffs assert in their breach of contract claim that Defendant breached its duties to indemnify Plaintiffs for those same losses.  As explained below, both claims fail because the Policy does not provide coverage for the losses that Plaintiffs seek to recover.

**1.      Applicable Law**[4]

A title insurance policy "is a contract by which the title insurer agrees to indemnify its insured for loss occasioned by a defect in title." *Appleby* v. *Chi. Title Ins. Co.*, 914 N.Y.S.2d 257, 260 (2d Dep't 2011) (quoting *L. Smirlock Realty Corp.* v. *Title Guar. Co.*, 52 N.Y.2d 179, 188 (1981)).  Like any other contract, "insurance contracts must be construed to give effect to the intent of the

---

Plaintiffs' pleadings.  Nevertheless, no facet of this Opinion's analysis would be altered if the Court were to consider the Agreement of Sale.

[4]      The Policy contains a choice-of-law provision providing that the Court "shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy."  (Policy § 17(a)).  Because the Property is located in New York City, New York law applies to Plaintiffs' claims in this case.  *See Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016) ("Generally, New York courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." (internal alteration and citation omitted)).

parties, as expressed in the plain meaning of the contract language."
*Sarinsky's Garage, Inc.* v. *Erie Ins. Co.*, 691 F. Supp. 2d 483, 485 (S.D.N.Y.
2010); *see also Olin Corp.* v. *Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir.
2012) ("Under New York law, insurance policies are interpreted according to
general rules of contract interpretation.").  "Since the title insurer's liability to
its insured is based, in essence, on contract law, that liability is governed and
limited by the agreements, terms, conditions, and provisions contained in the
title insurance policy." *Nastasi* v. *Cnty. of Suffolk*, 966 N.Y.S.2d 172, 174 (2d
Dep't 2013).

An insurance contract must be interpreted "so that a clear and
unambiguous policy provision is given its plain and ordinary meaning." *Dalton*
v. *Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009) (citation
omitted).  Ambiguity exists when "the terms of an insurance contract could
suggest more than one meaning when viewed objectively by a reasonably
intelligent person who has examined the context of the entire integrated
agreement and who is cognizant of the customs, practices, usages and
terminology as generally understood in the particular trade or business."
*Morgan Stanley Grp. Inc.* v. *New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir.
2000) (internal quotation marks and citation omitted).  "[W]here a contract's
language is clear and unambiguous, a court may dismiss a breach of contract
claim on a Rule 12(b)(6) motion to dismiss." *Wells Fargo Bank, N.A.* v. *Bank of
Am., N.A.*, No. 11 Civ. 4062 (JPO), 2013 WL 372149, at *4 (S.D.N.Y. Jan. 31,

2013) (quoting *Maniolos* v. *United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010)).

### 2. Plaintiffs Are Not Entitled to Coverage Under the Policy

Defendant moves to dismiss Plaintiffs' claims for breach of contract and declaratory judgment on the grounds that the revelation of the Property's landmark status is not a covered risk under the Policy, and that even if it were, this risk is excluded from coverage by several of the Policy's exclusions. (Def. Br. 11-20). Plaintiffs proffer both a broader interpretation of the Policy's covered risk and a narrower interpretation of the Policy's exclusions, contending that the undisclosed landmark designation created a defect in the Property's title that Defendant must indemnify against. (Pl. Opp. 7-12). As discussed below, the Court finds that Defendant presents the only plausible interpretation of the scope of coverage under the Policy.

### a. Covered Risks under the Policy

The Policy provides an enumerated list of ten covered risks, any of which triggers Defendant's obligation to indemnify Plaintiffs for the associated adverse economic effects. (*See generally* Policy, Covered Risks). Plaintiffs claim coverage under two of the Policy's Covered Risks, but neither claim is availing.

Plaintiffs' first basis for coverage is Covered Risk 2, which insures for risks attendant to "[a]ny defect in or lien or encumbrance on the Title." (Policy, Covered Risk § 2; Pl. Opp. 7-8). Covered Risk 2 specifies, in relevant part, that Defendant is obligated to insure against losses flowing from: "A defect in the Title caused by … (iii) a document affecting Title not properly created, executed,

13

witnessed, sealed, acknowledged, notarized or delivered; … [and] (vi) a
document not properly filed, recorded, or indexed in the Public Records
including failure to perform those acts by electronic means authorized by
law[.]" (*Id.*, Covered Risks § 2(a)(iii), (vi)).  Plaintiffs argue that even assuming
the Property's landmark designation was not recorded in the Public Records —
a point they contest, as described in further detail below — their claim fits
squarely within Covered Risk 2, because the landmark designation affects their
title to the Property.  (Pl. Opp. 8).

Defendant rejoins that a landmark designation from the LPC cannot
create a defect, lien, or encumbrance on the Property's title to qualify for
Covered Risk 2.  (Def. Reply 2-3).  Rather, in Defendant's view, a landmark
designation is an exercise of governmental power that serves merely to regulate
the Property's use or development, which is wholly distinct from the types of
impairments on Plaintiffs' ownership or interest in the Property addressed by
Covered Risk 2.  (*Id.*).

The Court finds Defendant's interpretation of the scope of this Covered
Risk to be the only one that accords with the language of the Policy and the
relevant law, including the line of New York cases making plain that local
regulations that restrict the use or development of real property do not give rise
to a defect in or encumbrance on title.  *See, e.g.*, *Voorheesville Rod & Gun Club,
Inc.* v. *E.W. Tompkins Co.*, 82 N.Y.2d 564, 571 (1993) ("[M]arketability of title is
concerned with impairments on title to a property, *i.e.*, the right to
unencumbered ownership and possession, not with legal public regulation of

14

the use of the property."); *accord Cone* v. *Stranahan,* 843 N.Y.S.2d 717, 719 (3d Dep't 2007).

By way of illustration, New York courts have found that zoning regulations do not impact the marketability of title, nor do they create a defect, lien, or encumbrance on title, because, despite their effect on a property's value, they do not impact one's right to "unencumbered ownership and possession." *See, e.g.*, *JBGR, LLC* v. *Chi. Title Ins. Co.*, 149 N.Y.S.3d 234 (2d Dep't 2021) (holding that zoning regulation restricting plaintiff's ability to construct residences on property did not affect title); *Wolf* v. *Commonwealth Land Title Ins. Co.*, 690 N.Y.S.2d 880, 881 (1st Dep't 1999) ("Since zoning laws regulate the manner in which the property can be used and do not impair title, the damages claimed by plaintiffs do not fall within the scope of the title insurance policy[.]" (citations omitted)). This reasoning is not confined to zoning rules. For instance, local sanitation regulations that affect how property can be used also do not impair title. *See Logan* v. *Barretto*, 675 N.Y.S.2d 102, 103 (2d Dep't 1998) ("Since the Sanitary Code provisions regulate the manner in which the property can be used and do not impair title, the damages claimed by the plaintiffs do not fall within the scope of the title policy."). Even beyond the regulatory context, restrictions in a deed that limit the permissible uses of a property do not create an encumbrance on title. *See Homeside Dev. Corp.* v. *Dassa Brill LLC*, 813 N.Y.S.2d 47, 47 (1st Dep't 2006) (finding that a "deed restriction requiring that the property … be

used for community rather than residential or commercial purposes did not constitute an encumbrance upon the marketability of title to the property").

The logic underpinning these rulings applies with equal force to the landmark status of the Property.  The LPC's landmark designation restricts the manner in which the Property can be used, but in no way impacts Plaintiffs' right to "unencumbered ownership and possession" of the Property.  Accordingly, Covered Risk 2, which provides coverage for title defects or encumbrances, does not extend to the Property's landmark status.

Plaintiffs' second putative basis for coverage is Covered Risk 5, which insures against risks associated with the violation or enforcement of certain laws or governmental regulations that are recorded in the Public Records.  (Pl. Opp. 9).  More precisely, Covered Risk 5 indemnifies Plaintiffs for loss or damage incurred by reason of:

> [t]he violation or enforcement of any law, ordinance, permit, or governmental regulation … restricting, regulating, prohibiting or relating to … (a) the occupancy, use, or enjoyment of the Land [or] (b) the character, dimensions, or location of any improvement erected on the Land … if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

(Policy, Covered Risks § 5).  Plaintiffs frame this provision as entitling them to insurance coverage if "*any* governmental authority restricts [their] ability to use or enjoy the Property" or to improve it for a particular purpose.  (Pl. Opp. 9 (emphasis added)).

16

Defendant homes in on the requirement that any violation or intent to enforce must be recorded in the Public Records — a defined term in the Policy — to trigger a coverage obligation under Covered Risk 5. (Def. Br. 11-15). Defendant argues that the Property's landmark designation does not appear in the relevant Public Records concerning the Property's chain of title, meaning that Covered Risk 5 cannot entitle Plaintiffs to indemnification for losses based on the LPC's unrecorded exercise of governmental power. (*Id.* at 12-13).

Here too, Defendant offers the only plausible reading of Covered Risk 5, whereas Plaintiffs' proffered interpretation is untethered from the Policy's language and imposes obligations on Defendant for which the parties did not contract. The Policy defines "Public Records" as limited to those "[r]ecords established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge." (Policy, Conditions § 1(i)). Under New York law, "[a] conveyance of real property … may be recorded in the office of the clerk of the county where such real property is situated"; what is more, "[e]very such conveyance not so recorded is void as against any person who subsequently purchases or acquires … the same real property … and whose conveyance, contract or assignment is first duly recorded[.]" N.Y. Real Prop. Law § 291. In New York County, where the Property at issue in this case is located, the Office of the City Register records and maintains all property-related documents in the ACRIS database. N.Y.C. Admin. Code § 7-607 (providing that "[e]very

instrument affecting real estate or chattels real, situated in the counties within the city, shall be indexed pursuant to the provisions of this chapter [establishing the City Register]").[5]  Thus, in the context of the Property and landmark designation at issue in this case, the Court understands "Public Records" to mean the real property records maintained by the Office of the City Register, as reflected on ACRIS.  *Cf. Hon Realty Corp.* v. *First Am. Title Ins. Co.*, 291 F. App'x 951, 953 (11th Cir. 2008) (unpublished per curiam opinion) (finding the contractual term "public records" in an identical title insurance policy to "contemplate[ ] only the inclusion of those records filed under a state recording statute and not those general public records that may be available from, for example, a public records request with the state or a local municipality"); *Haw River Land & Timber Co.* v. *Laws. Title Ins. Corp.*, 152 F.3d 275, 280-81 (4th Cir. 1998) (reviewing North Carolina law in the context of identical title insurance policy language to limit "public records" to those "designed to put purchasers of real property on constructive notice about matters affecting title to the property which they are purchasing").

Therefore, by its plain terms, Covered Risk 5 is triggered only insofar as a notice of a legal violation or intent to enforce a law is recorded in the real property records maintained by the Office of the City Register.  While it is undisputed that the Property received landmark status as early as October 9,

---

[5]      *See also ACRIS*, N.Y.C. DEP'T OF FIN., https://www1.nyc.gov/site/finance/taxes/acris.page (last visited July 11, 2022) (explaining that ACRIS contains property records for Manhattan, Queens, Bronx, and Brooklyn from 1996 to the present).

2012 (Sussner Decl., Ex. H at 27-30),[6] the ACRIS records reveal that this landmark designation was not recorded until August 19, 2020 (*id.*, Ex. G). Because the landmark designation was not recorded in the relevant public records as of the date of the Policy, it cannot stand as the basis for coverage under Covered Risk 5.

Plaintiffs' arguments seeking to avoid Covered Risk 5 are unpersuasive. *First*, Plaintiffs contend that Covered Risk 5 extends to *any* circumstances in which the government restricts or regulates Plaintiffs' occupancy, use, enjoyment, or location of any improvement erected on the Property.  (Pl. Opp. 9).  Further, Plaintiffs assert that Covered Risk 5 does not "require a 'specific regulatory restriction' to be 'recorded' in order for Plaintiffs to be entitled to indemnification."  (*Id.*).  These arguments flatly disregard the relevant Policy provision's language circumscribing coverage to instances in which "notice, describing any part of the Land, is *recorded* in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice."  (Policy, Covered Risks § 5 (emphasis added)).  Plaintiffs' position cannot be harmonized with the unambiguous language of the contract.

*Second*, Plaintiffs assert that accepting Defendant's argument that the landmark designation was not recorded in the Public Records would require the Court to impermissibly decide a contested factual issue at the pleadings

---

[6]    The Notice of Designation marked as Exhibit H to the Sussner Declaration is not consecutively paginated.  For clarity's sake, the Court's pinpoint citations to this exhibit correspond to the pagination generated by the Court's Electronic Case Filing system.

stage. (Pl. Opp. 12-13). To the contrary, New York County's real property records — which are undoubtedly proper subjects of judicial notice — conclusively establish that the Property's landmark designation was not recorded in the Public Records, as contemplated by the Policy. (Sussner Decl., Ex. G). None of the cases Plaintiffs cite counsels otherwise. (*See* Pl. Opp. 13). For example, Plaintiffs refer to two cases involving an insurance company's failure to disclose defects of title that were matters of public record, but these cases are clearly inapposite to the unrecorded landmark designation at issue in this case. *See Wash. Temple Church of God in Christ, Inc.* v. *Glob. Props. & Assocs., Inc.*, 37 Misc. 3d 1211(A), 961 N.Y.S.2d 362 (Table), 2012 WL 5187556, at *1-2 (N.Y. Sup. Ct. 2012) (dealing with transfers of a deed, all of which were recorded); *Hamelin* v. *ETNA Abstract Corp.*, 665 N.Y.S.2d 503, 505-06 (N.Y. Sup. Ct. 1997) (concerning failure to disclose a recorded notice of attachment). And Plaintiffs' remaining cases do not implicate title insurance or real property issues at all. *See 237 Park Invs. LLC* v. *Royal & Son All.*, No. 03 Civ. 63024 (PKC), 2004 WL 385067 (S.D.N.Y. Mar. 1, 2004) (denying motion to dismiss claims based on general commercial liability policy); *Phillips* v. *Kidder, Peabody & Co.*, 782 F. Supp. 854 (S.D.N.Y. 1991) (denying summary judgment in securities fraud action).

Accordingly, the Property's unrecorded landmark designation does not fall into either of the Covered Risks that Plaintiffs suggest as bases for their claim for indemnification under the Policy, nor is it encompassed within any of the Policy's other Covered Risks. For this reason, Plaintiffs are not entitled to

indemnification for their losses, and their claims for breach of contract and declaratory judgment must be dismissed.

### b.   Exclusions from Coverage

Even if the LPC's unrecorded landmark designation of the Property were deemed a defect or encumbrance on title covered by the Policy, Plaintiffs still would not be entitled to indemnification because the Policy squarely excludes coverage for the losses they seek to recover in this action.  As relevant here, Exclusion 1(a) provides that Defendant is not obligated to insure against loss, costs, attorneys' fees, or expenses arising from

> [a]ny law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to … the occupancy, use, or enjoyment of the Land; … the character, dimensions, or location of any improvement erected on the Land; … or the effect of any violation of these laws, ordinances, or governmental regulations.

(Policy, Exclusion 1(a)(i)-(ii).  Exclusion 1 further clarifies that it "does not modify or limit the coverage provided under Covered Risk 5." (*Id.*).

Plaintiffs seek to avoid Exclusion 1(a) by framing their claim for insurance as implicating a defect in the Property's title, rather than a governmental regulation.  (Pl. Opp. 10).  This argument fails for the reasons just discussed, namely that Plaintiffs' insurance claim does not implicate a title defect.  Indeed, several courts have construed provisions analogous to Exclusion 1(a) as applying to claims arising from a government's exercise of its regulatory powers.  For example, in *Wolf* v. *Commonwealth Land Title Ins. Co.*, a plaintiff that had purchased a title insurance policy sought to recover the cost

of removing a deck extension that violated a zoning regulation.  690 N.Y.S.2d at 880.  Citing a policy provision substantively identical to Exclusion 1(a), the First Department held that "[s]ince zoning laws regulate the manner in which the property can be used and do not impair title, the damages claimed by plaintiffs do not fall within the scope of the title insurance policy[.]"  *Id.* at 881; *see also Batra* v. *Elec. Land Servs., Inc.*, 41 Misc. 3d 1211(A), 980 N.Y.S.2d 274 (Table), 2013 WL 5607243, at *8 (N.Y. Sup. Ct. 2013) (excluding from coverage under title insurance policy plaintiff's losses incurred by reason of change to zoning code that impacted property owner's construction plans), *aff'd,* 24 N.Y.S.3d 912 (2d Dep't 2016).[7]

Plaintiffs also suggest that the Court should follow the substantive analysis employed by the New York State Supreme Court in its decision denying Defendant's prior motion to dismiss.  (Pl. Opp. 5 n.1, 19-20; *see also* Sussner Decl., Ex. K ("State Trial Court Decision")).  The Court, however, analyzes the language and structure of the Policy differently.  In relevant part, the trial court denied Defendant's motion to dismiss because:

> [M]uch of the exceptions itemized in "Exclusion 1" are
> apparently vitiated by the language of Covered Risk 5,

---

[7]    Additionally, to the extent that Plaintiffs suggest that their injury does not flow from a government regulation, they are incorrect.  Plaintiffs' insurance claim flows from the LPC's exercise of the authority to designate historic districts granted to it by the New York City Charter and the New York City Administrative Code.  *See* N.Y.C. Charter ch. 74, § 3020 (establishing the LPC); N.Y.C. Admin Code §§ 25-301 to 25-322 (outlining the scope of the LPC's powers).  Thus, Plaintiffs' claim for indemnification under the Policy pursues losses that are inescapably associated with the government's exercise of statutory or regulatory powers that restrict the use, enjoyment, and ability to improve the Property.  This is precisely the subject matter for which Exclusion 1 precludes coverage.  Accordingly, even if the landmark designation impacted Plaintiffs' title to the Property — which it does not — Exclusion 1(a) would still bar coverage for the losses related to the LPC's exercise of regulatory power.

> the latter of which is to prevail in the event there is any conflict or ambiguity between the two.  There appears to be a disputed issue of fact as to whether the landmark status was recorded in any public records[.]

(State Trial Court Decision 2).  This Court concludes otherwise as to both of these substantive points.

Beginning with the interpretation of the relevant Policy provisions, the Court observed that Covered Risk 5 and Exclusion 1(a), whether read in isolation or collectively, do not admit of any ambiguity and are not in conflict. The Policy is structured such that Defendant is obligated to provide insurance for certain "covered risks," subject to the enumerated "exclusions" from coverage.  In other words, the Policy's "covered risks" affirmatively create coverage, whereas the Policy's "exclusions" expressly eliminate coverage.  The total scope of coverage under the Policy is thus the balance of the covered risks, less the exclusions.  *See Albert J. Schiff Assocs., Inc.* v. *Flack*, 51 N.Y.2d 692, 697 (1980) ("[T]he protection the insured has purchased is the sum total, or net balance, ... of the [insuring agreement and exclusion clauses.]  For it is not either alone, but the combination of both, which defines the scope of the protection[.]").

Properly understood, there are no circumstances in which Covered Risk 5 can "prevail" over Exclusion 1(a).  Nor does Covered Risk 5 "vitiate" the exclusions outlined by Exclusion 1(a).  Rather, the two provisions are mutually reinforcing: Covered Risk 5 provides coverage for specific types of governmental actions touching upon certain property rights insofar as they are recorded in the Public Records, whereas Exclusion 1(a) makes explicit that such

governmental actions are excluded from coverage when they are unrecorded. Framed thusly, the circumstances of this case are clear-cut: any loss to Plaintiffs stemming from the Property's unrecorded landmark designation does not qualify for coverage under Covered Risk 5 and is also excluded from coverage under Exclusion 1(a).

The Supreme Court's finding that there is a disputed issue of fact as to whether the landmark status was reported in the public records also disregards the Policy's definition of "Public Records." As discussed *supra*, Public Records is restricted to the real property records specified by the state's recording statutes. The Policy did not impose upon Defendant an obligation to search the entire universe of publicly available information to find the landmark designation. As Defendant has produced the pertinent public records, which do not reflect the Property's landmark designation as of the date of the Policy, there is no disputed fact concerning the recording of this designation in the Public Records.

Therefore, the Court concludes that Plaintiffs' claim for indemnification for the Property's landmark designation is excluded from coverage by Exclusion 1(a).[8]

\*      \*      \*

---

[8]     Defendant additionally argues that Plaintiffs' insurance claim is also excluded by Exclusion 1(b), which precludes coverage for losses based on "[a]ny governmental police power," as well as Exclusion 3(a), which excludes from coverage matters that were "assumed" or "agreed" upon by the insured. (Def. Br. 19-20; Def. Reply 6-8). As the Court has concluded that Plaintiffs' claim is foreclosed by Exclusion 1(a), it need not determine whether Plaintiffs' claim is foreclosed by these additional exclusions.

The Court's careful review of the Policy discloses no ambiguity as to whether Defendant is obligated to indemnify Plaintiffs for their losses originating from the Property's landmark designation.  Indeed, Plaintiffs' losses are not within any of the Covered Risks enumerated in the Policy and are also excluded from coverage under Exclusion 1(a).  Either reason is sufficient to deny Plaintiffs' claims for indemnification.  Accordingly, the Court dismisses Plaintiffs' claims for breach of contract and declaratory judgment.[9]

## C.     Plaintiffs Have Not Stated a Claim for Negligence

Plaintiffs' final claim is for negligence.  In support of this claim, Plaintiffs allege that Defendant failed to exercise reasonable care in issuing the Title Report and the Policy because it did not identify that the Property was located on a landmarked site.  (Am. Compl. ¶¶ 34-43).  Because the Title Report merged with the Policy upon the latter's issuance and Defendant owed no duty under the Policy to report the landmark status of the Property, Plaintiffs' negligence claim cannot survive.

### 1.     Applicable Law

It is "well settled law that a cause of action for negligence in searching title does not lie in an action on the policy."  *Citibank, N.A.* v. *Chi. Title Ins. Co.*, 632 N.Y.S.2d 779, 781 (1st Dep't 1995) (collecting cases); *see also Ilkowitz* v. *Durand*, No. 17 Civ. 773 (PGG), 2018 WL 1595987, at *15 (S.D.N.Y. Mar. 27,

---

[9]     Defendant argues that Plaintiffs' claim for declaratory judgment should be dismissed as duplicative of their breach of contract claim.  (Def. Br. 22-23; Def. Reply 8-9).  Because the foregoing analysis disposes of both of these claims, the Court need not reach whether Plaintiffs' claim for declaratory relief should be dismissed for the additional reason that it is duplicative.

2018) ("[A] title insurance policy is separate and distinct from a contract for a title search, and a cause of action for a negligent title search may not be asserted under a title insurance policy."). This is so because "[a] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated[.]" *Clark-Fitzpatrick, Inc.* v. *Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987); *accord Union St. Tower LLC* v. *First Am. Title Co.*, 42 Misc. 3d 1229(A), 986 N.Y.S.2d 869 (Table), 2014 WL 763233, at *8 (N.Y. Sup. Ct. 2014). Moreover, absent a provision to the contrary, the nature of a contract for title insurance leaves no room for basing liability on the standard of care applied by the insurer in performing a title search. *See Citibank*, 632 N.Y.S.2d at 781 ("The doctrine of skill or negligence has no application to a contract of title insurance."); *accord Maggio* v. *Abstract Title & Mortg. Corp.*, 98 N.Y.S.2d 1011, 1013 (4th Dep't 1950)). Title insurance "is designed to save [the insured] harmless from any loss through defects, liens[,] or [e]ncumbrances that may affect or burden his title when he takes it." *Trenton Potteries Co.* v. *Title Guarantee & Tr. Co.*, 176 N.Y. 65, 72 (1903). It thus follows "as a general rule … that when the insured gets a good title, the covenant of the insurer has been fulfilled, and there is no liability." *Id.*

While a cause of action for negligence based on a deficient title search cannot be sustained under a title insurance policy, such a claim may arise under a certificate of title. *See Citibank*, 632 N.Y.S.2d at 782 ("The contract for a title search is separate and distinct from the contract of insurance; liability for a negligent search arises from the former."); *accord Ilkowitz*, 2018 WL

26

1595987, at *15.  That said, where "the certificate of title has merged in the subsequently issued title [insurance] policy, any action for damages arising out of the search — whether sounding in tort or contract — is foreclosed." *Citibank*, 632 N.Y.S.2d at 782 (citation omitted); *accord Valcon Am. Corp.* v. *CTI Abstract of Westchester*, 28 Misc.3d 1228(A), 958 N.Y.S.2d 64 (Table), 2010 WL 3385590, at *4 (N.Y. Sup. Ct. 2010).  "Under such circumstances, the title insurance policy voids the certificate of title, and all causes of action are restricted to the policy's terms."  *Ilkowitz*, 2018 WL 1595987, at *15 (internal quotation marks, citations, and alterations omitted).

### 2.    Defendant Did Not Owe Plaintiffs a Duty to Disclose the Property's Landmark Status

Plaintiffs seek to base their negligence claim on both the Policy and the Certificate of Title.  The Court begins its analysis by addressing the Policy before turning to the Certificate of Title.

Plaintiffs allege that they may hold Defendant liable under the Policy for its alleged failure to exercise reasonable care when searching for and disclosing all relevant defects in the Property's title.  (Pl. Opp. 15-18).  This claim necessarily fails, as New York law clearly precludes Plaintiffs from pursuing a claim for negligence under the Policy.  *See, e.g.*, *Citibank*, 632 N.Y.S.2d at 781-82.  In arguing to the contrary, Plaintiffs cite two inapposite cases that do not undermine this precedent.  (*See* Pl. Opp. 16-18).

Plaintiffs first rely on *Carleton* v. *Lombard, Ayers & Co.*, 149 N.Y. 137 (1896), to argue that Defendant should be held liable on a negligence theory for providing an "unmerchantable" title containing a hidden defect.  (Pl. Opp. 16-

17).  But to describe this case is to distinguish it: *Carleton* involved a breach of an executory contract for refined petroleum.  *Carleton,* 149 N.Y. at 138.  The issue presented to the New York Court of Appeals concerned the extent to which a manufacturer that contracts to sell a specific product impliedly warrants that the product will not contain any latent defects.  *Id.* at 143-44.  The court held that a manufacturer is under an obligation to deliver products "free from latent or hidden defects that rendered it unmerchantable at the time and place of delivery and that could have been avoided or guarded against ... by reasonable care and skill."  *Id.* at 153.  However, Defendant in this case is not a manufacturer of goods, and Plaintiffs' claim for indemnification under a title insurance policy does not resemble the defective petroleum product at issue in *Carleton.*  Plaintiffs strain to analogize to this wholly distinct context, and the rule emanating from this case does not apply to this title insurance dispute.

Next, Plaintiffs cite *Chrysler First Financial Services Corp. of America* v. *Chicago Title Insurance Co.,* 595 N.Y.S.2d 302 (N.Y. Sup. Ct. 1993), to support their contention that Defendant can be liable under the Policy for failing to deliver a complete and accurate title report.  (Pl. Opp. 17-18).  In that case, a junior mortgagee brought suit under three separate title insurance policies for an insurance company's provision of incorrect information concerning the amounts of senior mortgage liens on the subject properties.  *Chrysler First Fin. Servs.,* 595 N.Y.S.2d at 304.  The New York Supreme Court found that the insurance company had not performed its contractual duty under the title

insurance policies because it failed to accurately report in the policies the amount of the existing prior mortgages. *Id.* at 305-06. Notwithstanding the obvious difference here that Defendant's failure to include the Property's landmark status did not render the title policy inaccurate, the plaintiff in *Chrysler* was not pursuing any claim based on a negligence theory. Rather, that decision was predicated entirely on the defendant's breach of its *contractual* duty to ensure the correctness of all instruments affecting the title of the subject properties. *Id.* There is nothing in the *Chrysler* decision that cuts against the established precedent disallowing claims sounding in negligence under a title insurance policy.

Plaintiffs also assert a claim for negligence based on the Certificate of Title. (Pl. Opp. 18-19). This claim also fails because the Certificate of Title merged with the Policy once the Policy was issued. The Certificate of Title expressly provides that it "shall terminate … upon the issuance of title insurance in accordance herewith." (Title Report 1). Furthermore, pursuant to Condition 15(b) of the Policy, "[a]ny claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy." (Policy, Condition 15(b)). Moreover, Condition 15(a) provides that "[t]his policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company." (*Id.*, Condition 15(a)). These provisions clearly establish that the Certificate of Title merged with the Policy when the latter was issued, thus foreclosing any action for damages arising out of the previously conducted title

search.  *See Citibank*, 632 N.Y.S.2d at 782.[10]  Accordingly, Plaintiffs' negligence claim, whether based on the Policy or the Certificate of Title, is not adequately stated.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is GRANTED.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:    July 11, 2022
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[10]  The Court does not agree with Plaintiffs that *Cruz* v. *Commonwealth Land Title Insurance Co.*, 556 N.Y.S.2d 270 (1st Dep't 1990), suggests that the applicable contractual language is insufficiently clear to establish merger between the Certificate of Title and the Policy.  (Pl. Opp. 19).  The First Department in *Cruz* articulated the general legal principle that "[c]ontracts intended to exculpate a party from the consequences of its own negligence are frowned upon by the law and strictly construed against the party seeking exemption from liability[.]"  *Cruz*, 556 N.Y.S.2d at 272.  Unlike in *Cruz*, where defendant argued that a policy limit extended to a service not expressly mentioned in the title insurance policy, the relevant contractual language at issue in this case admits of only one interpretation, *i.e.*, that the Certificate of Title terminated upon the issuance of the Policy.  Moreover, at least one New York court has found identical termination language in a certificate of title sufficiently clear to warrant merger with a subsequent policy.  *See Cane* v. *First Am. Title Ins. Co. of N.Y.*, No. 30273/2012, 2015 WL 2441883 (N.Y. Sup. Ct. May 7, 2015) (finding merger between certificate of title and title insurance policy where certificate of title "terminate[d] … upon the issuance of title insurance").